UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **CALVIN JACKSON, SR., INDIVIDUALLY AND ON BEHALF OF C.J.**<br>     Plaintiff | **CIVIL ACTION NO.** |
| | **JUDGE** |
| **VERUS** | **MAGISTRATE** |
| **NORTH CADDO HOSPITAL SERVICE DISTRICT d/b/a NORTH CADDO MEDICAL CENTER**<br>     Defendant | **JURY TRIAL DEMANDED** |

## COMPLAINT

The Complaint for Damages of Calvin Jackson, Sr., individually and on behalf of C.J., resident and domiciliary of the Parish of Bossier, State of Louisiana, respectfully represents:

## JURISDICTION AND VENUE

1.

This litigation presents a claim under the Emergency Medical Treatment and Labor Act codified in 42 U.S.C. § 1395dd or ("EMTALA"). Accordingly, this Court has subject matter jurisdiction over this lawsuit and the claims asserted herein pursuant to 28 U.S.C. § 1331.

2.

No pre-litigation requirements or administrative filings apply to Complainant's claims under 42 U.S.C. § 1395dd nor for any other relief sought in this lawsuit against Defendant, North Caddo Hospital Service District d/b/a North Caddo Medical Center. No relief is sought herein under medical malpractice.

3.

Venue is proper in the United States District Court for the Western District of Louisiana pursuant to 28 U.S.C. § 1391(b)(2) as the events giving rise to the claims asserted herein occurred in this jurisdictional district.

**PARTIES**

4.

A. Plaintiff, Calvin Jackson, Sr., is an individual of the full age of majority and a resident and domiciliary of Bossier Parish, State of Louisiana, and the father of the late C.J., who died on August 15, 2020.

B. Defendant, North Caddo Medical Center, is a domestic entity doing business in the State of Louisiana as a hospital providing emergency medical services in Caddo Parish, and is a "participating hospital" as defined in 42 U.S.C. § 1395dd and 42 U.S.C. § 1395cc.

5.

Defendant is justly and truly indebted to Plaintiff in a full and true sum which will sufficiently compensate Plaintiff with legal interest from the date of judicial demand, all expert witness fees, and costs of these proceedings for the following reasons, to-wit:

**CHRONOLOGY OF EVENTS GIVING RISE TO
PLAINTIFF'S CAUSE OF ACTION**

6.

On Sunday, August 9, 2020 at 5:34 pm, Calvin, Sr. and C.J. presented to the emergency room at North Caddo Medical Center ("NCMC") as C.J. had been experiencing nausea and vomiting for approximately four days. On August 9, 2020 in particular, C.J. had vomited 5 to 6 times and was unable to keep any food, Pedialyte or water down.

7.

Upon presentation at NCMC, Calvin, Sr. assisted his son to the front desk because C.J. was too weak to walk on his own.

8.

When they arrived at triage, Calvin, Sr. informed the triage nurse that C.J.'s chief complaint was "dizziness, vomiting" and that he had been vomiting for 4 days and had vomited 5 to 6 times that day. The triage nurse made note of this on C.J.'s chart. At this time, C.J. also told the triage nurse that he had a rash on his penis.

9.

C.J. and Calvin, Sr. then went to the waiting room for about 15 minutes until they were sent back in the examination room.

10.

Dr. Chandler then came into the examination room, told C.J. that he wanted to examine the rash on his penis and asked C.J. to pull his pants down to show him the rash.

11.

Dr. Chandler told C.J. and Calvin, Sr. that he would prescribe a cream to treat the rash and Dr. Chandler began walking out of the room.

12.

Before Dr. Chandler left the room, Calvin, Sr. asked him what was causing C.J.'s nausea, vomiting and shortness of breath. Dr. Chandler then examined C.J's breathing and told Calvin, Sr. that he was breathing fine and everything would be ok. Dr. Chandler also ordered an X-ray of C.J.'s chest and ECG.

13.

Dr. Chandler interpreted the chest X-Ray and ECG and despite the ECG reading as "abnormal," Dr. Chandler noted it was "probably normal for age." Dr. Chandler failed to provide any information as to his why this was his belief.

14.

Dr. Chandler reported in his noted, "Pt's father states that the patients is 'short of breath', pt never reported this."

15.

Dr. Chandler reported in his notes that C.J. was "MR" or "mentally retarded."

16.

Dr. Chandler's notes further indicate that C.J. was tachycardic with a heart rate of 119 BPM and in Stage 2 hypertension with a diastolic blood pressure of 97 mmHG.

17.

Ultimately, Dr. Chandler diagnosed C.J. with a yeast infection and discharged him at 8:23 pm with a prescription for nystatin topical cream.

18.

The next morning, Monday, August 10, 2020, Calvin, Sr.'s fiancé, Jessica Jackson, found C.J. on the floor barely breathing and she called 911.

19.

Soon thereafter, the Bossier Parish EMS arrived and, while in route to Willis Knighton - Bossier, C.J. went into cardiopulmonary arrest. The EMTs intubated C.J., he was given a dose of Epinephrine and Sodium Bicarbonate and the EMTs performed chest compressions. Moreover, the EMTs performed a glucose check, which showed C.J.'s blood sugar level was 460 mg/dl.

20.

C.J. was without a pulse when he arrived at Willis Knighton-Bossier at 11:26 am on August 10, 2020, but regained rhythm after additional CPR.

21.

At 11:40 am Dr. Bryant Boyd examined C.J. and ordered blood work, which showed his blood sugar had increased to 1103 mg/dl and he had elevated potassium and creatinine levels.

22.

At 12:26 pm, C.J. was transferred to Willis Knighton – South via EMS and at 1:01 pm on August 10, 2020, C.J. was admitted to the Willis Knighton-South Pediatric Intensive Care Unit.

23.

Upon examination, Dr. Minh Tran found that C.J. was unresponsive, tachycardic, "and in diabetic ketoacidosis with hypovolemic shock versus cardiogenic shock versus septic shock."

24.

Dr. Tran planned to continue C.J. on mechanical ventilation with propofol, ordered fluid resuscitation and epinephrine infusion, and ordered insulin at 0.1 units per kg/hr. In addition, Dr. Tran informed Calvin, Sr. that his son was in critical condition with a high rate of mortality.

25.

Despite the medical treatment C.J. received at Willis Knighton – South, his medical providers were unable to control his blood sugar or otherwise reverse his diabetic ketoacidosis.

26.

Ultimately, C.J. passed away on August 15, 2020 at 6:40 pm.

27.

C.J.'s death certificate listed the cause of death as diabetic ketoacidosis.

## **CLAIM FOR RELIEF**

28.

Complainant brings this claim for violation of 42 U.S.C. § 1395dd(a) in that North Caddo Medical Center failed to provide C.J. an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition exists.

29.

Complainant brings this claim for violation of 42 U.S.C. § 1395dd(b) in that North Caddo Medical Center detected and had actual knowledge that C.J. was suffering from an emergency medical condition and failed to stabilize him before discharging him home. Dr. Chandler had knowledge, based on the triage notes and Calvin Sr.'s statements, that C.J. had been vomiting for 5 days, was short of breath, had an abnormal ECG, and was tachycardic. Dr. Chandler does not indicate in his notes why he disregarded the triage nurse or Calvin Sr., and instead relied solely on C.J. who he believed to be intellectually disabled.

30.

As a result of Defendant's violation of 42 U.S.C. § 1395dd, Complainant is entitled to recover all damages allowed by Louisiana law due to Defendant's intentional "dumping" of C.J. under 42 U.S.C. § 1395dd(d)(2)(A), including without limitation, physical pain and suffering, mental anguish, emotional trauma, loss of life, loss of enjoyment of life, lost chance of survival, and wrongful death.

31.

Complainant requests trial by jury.

32.

WHEREFORE, Complainant, Calvin Jackson, Sr., individually and on behalf of C.J., prays that Defendant be duly cited to appear and Answer the Complaint, and after due proceedings had, there by a judgement against Defendant, North Caddo Medical Center, in true sum to be determined by the trier of fact, together with legal interest thereon form the date of judicial demand for all costs of these proceedings, including expert witness fees.

Lastly, Complainant prays for all orders and decrees necessary and proper under the premises and for full, general and equitable relief.

**Respectfully submitted:**

__/s/ *William Boyles*_____
RAVI SANGISETTY (#30709)
WILLIAM BOYLES (#31632)
AMANDA OLMSTED (#40002)
**SANGISETTY LAW FIRM**
3914 Canal St.
New Orleans, Louisiana 70119
Telephone: (504) 662-1016
Facsimile: (504) 662-1318
E-mail: rks@sangisettylaw.com
              william@sangisettylaw.com
              amanda@sangisettylaw.com

**COUNSEL FOR PLAINTIFF**

****SERVICE TO BE ACCOMPLISHED BY WAIVER****