UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CALVIN JACKSON, SR., INDIVIDUALLY AND ON BEHALF OF C.J. | CIVIL ACTION NO. 22-0171 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| NORTH CADDO HOSPITAL SERVICE DISTRICT D/B/A NORTH CADDO MEDICAL CENTER | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM ORDER

Before the Court are two Daubert Motions: (1) Plaintiff's Daubert Motion to Exclude Testimony/Statements of Dr. Jacquelyn White (Record Document 17); and (2) Defendant's Daubert Motion to Exclude or Limit Testimony of Dr. Jullette Saussy (Record Document 19). The motions are fully briefed. See Record Documents 21, 24, and 26. For the reasons set forth below, both Daubert Motions are **DENIED**.

This case presents claims under the Emergency Medical Treatment and Labor Act, 42 U.S.C. § 1395dd ("EMTALA"). Plaintiff Calvin Jackson, Sr. ("Jackson"), individually and on behalf of his minor child, C.J., is seeking damages in connection with the death of C.J. C.J. received emergency medical care on August 9, 2020 at North Caddo Medical Center ("NCMC"). Jackson alleges that NCMC failed to provide C.J. with an appropriate medical screening and failed to stabilize C.J. before discharging him, all in violation of EMTALA. Approximately six days later on August 15, 2020, C.J. died from diabetic ketoacidosis. Defendant NCMC maintains that it did not violate EMTALA, as C.J. received an appropriate medical screening and was examined, treated, and discharged all in accordance with the EMTALA. Both Plaintiffs and Defendants have offered expert

opinions as to what constitutes an appropriate medical screening under the EMTALA. Such expert testimony is the subject of the instant Daubert motions.

Congress did not intend the EMTALA to be a federal malpractice statute. See Marshall v. East Carroll Parish Hosp. Serv. Dist., 134 F.3d 319, 322 (5th Cir. 1998). Its purpose is to prevent "patient dumping," i.e., the practice of refusing to treat patients who are unable to pay. Id. The EMTALA "requires that participating hospitals give the following care to an individual who is presented for emergency medical care: (1) an appropriate medical screening, (2) stabilization of a known emergency medical condition, and (3) restrictions on transfer of an unstabilized individual to another medical facility." Battle ex rel. Battle v. Mem'l Hosp. at Gulfport, 228 F.3d 544, 557 (5th Cir. 2000), citing 42 U.S.C. § 1395dd(a)-(c). More specifically, Section 1395dd(a) of the EMTALA provides:

> In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an ***appropriate medical screening examination*** within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1)) exists.

42 U.S.C.A. § 1395dd(a) (emphasis added). Thus, under the EMTALA, an appropriate medical screening examination is not judged by proficiency in diagnosis, but rather by whether it was performed equitably in comparison to other patients with similar symptoms. See Marshall, 134 F.3d at 322.

The EMTALA does not define "appropriate medical screening examination." Id. at 323. An appropriate examination is one that the hospital would have provided "to any other patient in a similar condition with similar symptoms." Id. The plaintiff has the burden

2

of demonstrating that the hospital failed to provide an appropriate examination under the EMTALA.  See id. at 323–24.  The plaintiff may carry this burden by showing that either: (1) the hospital failed to follow its own standard screening procedures; or (2) there were "differences between the screening examination that the patient received and examinations that other patients with similar symptoms received at the same hospital"; or (3) the hospital offered "such a cursory screening that it amounted to no screening at all." Guzman v. Memorial Hermann Hosp. Sys., 409 Fed.Appx. 769, 773 (5th Cir. 2011).  Here, the NCMC policy provided:

> The Medical Screening Examination will be performed [by] the Emergency Department Physician and tailored to the presenting complaint and the medical history of any individual who comes to the Emergency Department seeking care. . . .  All MSE's will include the following, but are not limited to:
>
> 1. Chief complaint and pertinent history
> 2. Past medical and social history
> 3. Physical examination
> 4. Assessment
> 5. Laboratory and imaging studies if applicable

Record Document 17-4 at 7.

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

3

Fed. R. Evid. 702. Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. Pertinent evidence based on scientifically valid principles will satisfy those demands." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597, 113 S. Ct. 2786, 2799 (1993). The Daubert holding provided an illustrative list of factors that courts may use when evaluating the reliability of expert testimony. See id. at 592–594. These factors include whether the expert's theory or technique can be or has been tested, whether it has been subjected to peer review, whether it has a known or potential rate of error or standards controlling its operation, and whether it is generally accepted in the relevant scientific community. See id. at 593–594. "In short, expert testimony is admissible only if it is both relevant and reliable." Pipitone v. Biomatrix, Inc., 288 F.3d 239, 244 (5th Cir. 2002). Thus, the Daubert factors should be applied with flexibility and the question of whether an expert's testimony is reliable is ultimately a fact-specific inquiry. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 138, 119 S. Ct. 1167, 1170 (1999); Burleson v. Tex. Dep't of Criminal Justice, 393 F.3d 577, 584 (5th Cir. 2004).

Though the trial court must fulfill its role as gatekeeper in ensuring that all admitted expert testimony is both reliable and relevant, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." U.S. v. 14.38 Acres of Land, 80 F.3d 1074, 1078 (5th Cir. 1996). Thus, "[t]he rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, advisory committee's note (2000). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. The proponent of an expert's testimony

4

bears the burden of proving that it meets the requirements of Rule 702. See Moore v. Ashland Chem., Inc., 151 F. 3d 269, 276 (5th Cir. 1998). Whether these elements are met is a preliminary question for the district court to decide under Federal Rule of Evidence 104(a).

**Plaintiff's Daubert Motion to Exclude Testimony/Statements of Dr. Jacquelyn White (Record Document 17)**

Jackson seeks to exclude defense expert Dr. Jacquelyn White ("Dr. White"), arguing her reasoning cannot be applied to the facts at issue in this case because she did not read or review NCMC's EMTALA policies, procedures, or guidelines relating to medical screening examinations. Jackson submits that Dr. White's testimony is irrelevant because it would not assist the trier of fact in determining whether the actions of the treating emergency room physician violated NCMC's medical screening policy and/or EMTALA.

There is no dispute that Dr. White is a board certified physician in emergency medicine practicing in North Louisiana. The Court believes Dr. White is qualified as an expert to opine on appropriate medical screening examinations based on general standards of the medical community at large. Dr. White explained in her deposition why she did not feel the need to review NCMC's medical screening exam and stabilization document:

> I don't feel it would have had a different impact on evaluating the chart and looking to see if the patient had an adequate medical screening exam or not. I've reviewed multiple charts over the twenty something years, and I felt comfortable with looking at a chart and seeing if they had an adequate medical screeding exam. I've also looked at several policies and they're pretty much all the same on EMTALA.

Record Document 21-1 at 5-6.[1] Moreover, a close review of Dr. White's deposition seems to discount Jackson's position that Dr. White unequivocally stated no social or medical history was recorded. This Court believes that Dr. White has sufficiently set forth the factual basis underlying all of her opinions. Both parties agree that experts should not be permitted to testify as to the legal conclusion that EMTALA was violated. See also Record Document 19 at 2. It will be for the jury to make that determination and to decide the validity or correctness of Dr. White's opinions. See Chevron TCI, Inc. v. Capitol House Hotel Manager, LLC, No. CV 18-00776-BAJ-RLB, 2021 WL 2638036, at *4 (M.D. La. June 25, 2021) ("The validity or correctness of an expert's conclusions are issues for the jury to determine after the Daubert analysis."); In re Katrina Canal Breaches Consol. Litig., No. CA 10-866, 2012 WL 4328354, at *1 (E.D. La. Sept. 20, 2012) ("Courts should not [be] lured by arguments disguised as Daubert challenges that actually attack the weight of the expert testimony, not its admissibility."). Jackson's challenges to Dr. White's expert testimony go to credibility, not admissibility. Such challenges to the factual basis of Dr. White's opinion should be examined via cross-examination, not Daubert. See id.

---

[1] See Ruiz v. Kepler, 832 F. Supp. 1444, 1447–48 (D.N.M. 1993) ("However, based upon the plain language of § 1395dd(a), the Court does not find that 'appropriate' should be defined solely in terms of a plaintiff's treatment as compared with the treatment provided a similarly situated patient. Section 1395dd(a) requires more than equal treatment; it requires a screening examination 'within the capability of the hospital's emergency department.' 42 U.S.C. § 1395dd(a). This standard is of necessity 'individualized for each hospital, since hospital emergency departments have varying capabilities.' Baber, 977 F.2d at 879–80. Unlike malpractice law in which the standard of care required is based on the objective, reasonable person standard, [EMTALA's] screening provision creates a subjective test—did defendant hospital treat a would-be [EMTALA] plaintiff according to its own standards and capabilities. However, a subjective test does not mean that the Court should ignore evidence of accepted medical practice from which subjective standards can be inferred. At least one circuit has acknowledged that 'there may arise some areas of overlap' between the objective test of local malpractice law and the subjective test of the adequacy of a hospital's screening under [the EMTALA]. Gatewood v. Washington Healthcare Group, Inc., 933 F.2d 1037, 1041 (D.C.Cir.1991).").

Accordingly, Plaintiff's Daubert Motion to Exclude Testimony/Statements of Dr. White (Record Document 17) is **DENIED**.

**Defendant's Daubert Motion to Exclude or Limit Testimony of Dr. Jullette Saussy (Record Document 19)**

Defendant NCMC seeks to exclude Plaintiff's expert Dr. Jullette Saussy ("Dr. Saussy") on the grounds she does not meet the requirements of an expert under Rule 702. Plaintiff Jackson argues Dr. Saussy's deposition testimony contains conflicting statements and inconsistencies on the issues of medical screening examinations and stabilization requirements, thereby demonstrating that she does not have an accurate understanding of the elements of the EMTALA. Jackson notes that Dr. Saussy has never given an opinion in an EMTALA case and her lack of specialized training in the EMTALA to attack the reliability of her opinions. He also argues that she inappropriately conflates an EMTALA claim with general medical negligence. Jackson submits that Dr. Saussy's testimony will only confuse the jury.

The Court has extensively reviewed the briefing on the instant motion and finds that Dr. Saussy has extensive knowledge, skill, experience, training, and education such that she is qualified to be an expert witness in this case. She is board certified in emergency medicine and has made herself knowledgeable about the EMTALA. As an expert in emergency medicine, Dr. Saussy can review NCMC's EMTALA policies and procedures and C.J.'s medical records, and from there form her opinions as to an appropriate medical screening examination and stabilization requirements. Further, any concerns regarding conflicting statements and inconsistencies as to EMTALA standard are issues of credibility and weight, not expertise and admissibility. As noted previously, case law recognizes that there are instances where there is overlap between the objective test of local malpractice law (general medical negligence) and the subjective test of the

adequacy of a hospital's screening under the EMTALA.  Here, in the adversarial trial setting, the defense is free to attack and challenge the weight to be given Dr. Saussy's testimony via vigorous cross-examination and the presentation of contrary evidence. Accordingly, Defendant's Daubert Motion to Exclude or Limit Testimony of Dr. Saussy (Record Document 19) is **DENIED**.

    **IT IS SO ORDERED.**

    **THUS DONE AND SIGNED** in Shreveport, Louisiana on this 20th day of February, 2024.

    _____
    United States District Judge